[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and defendant, whose maiden name was Wassell, intermarried at Groton, Connecticut on February 17, 1965; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties and that the marriage has broken down irretrievably with no hope of reconciliation.
The parties have different opinions as to the cause of the breakdown of their marriage. Plaintiff attributes the breakdown to sexual and financial problems and to threats from defendant to plaintiff.
She testified that the defendant had a drinking problem, which caused him to be away from home occasionally; that CT Page 6871 defendant suffered temper tantrums; that sex between the parties decreased due to plaintiff's vasectomy; that defendant preferred anal sex to normal sex; that defendant gave plaintiff a black eye and threatened her with a rifle; that in an argument over a mortgage application, defendant was abusive to her and threatened her; that she called the police, left the home and went to a shelter and that she subsequently obtained a restraining order against the defendant.
Defendant claims that the cause of the marriage breakdown was because he never came up to plaintiffs expectations. The defendant testified that plaintiffs testimony about his sexual preference is untrue; that when he struck her plaintiff had been aggravating him; that he did not have a drinking problem; that he was never reprimanded for drinking or violence during his 20 year career in the Navy; that his occasional absences from the home were due to his military service; that his final act of abuse to plaintiff was caused by her stating unacceptable things about his mother, which she refused to recant, and that after a separation of about five years, defendant returned to the plaintiff on a trial basis which restricted his occupancy in the marital home to a small bedroom, bathroom, kitchen and family room without cooking privileges.
Based on the above, it is clear that the marriage of the parties has irretrievably broken down without any hope for reconciliation. I find that the defendant was more at fault for the breakdown than the plaintiff.
Plaintiff, who was born March 4, 1944, appears to be in good health except for eye problems, which has greatly diminished her ability to see. She has 20/400 vision in the left eye and 20/50 with a contact lens in the right eye, which she can only use about 4-5 hours a day without causing further injury to her sight. She has retina problems which requires that she tilts her head to get vision from that portion of the retina which is undamaged; that she needs help shopping; that she needs help in walking to avoid obstacles on the sidewalks, curbs and going up and down stairs, etc.; that she doesn't drive as she has no depth perception and that she can't see faces. She does, however, get around her home without help as she has memorized the layout of the marital residence.
The prognosis for her eyesight is not good. Further, she claims she suffers from arthritis in her hip and knees as a CT Page 6872 result of her having contacted Lyme Disease. Plaintiff does not have medical insurance coverage.
The defendant, who was born April 8, 1940, appears to be in good health except for arthritis in the hands, knees and neck. He further suffers from a balance problem when he looks up or down. He claims no treatment is available for his problem.
The plaintiff graduated from high school in 1962. At the time of her marriage to the defendant, she was employed at the Groton Town Hall as an assistant to the secretary of the City Manager until September 17, 1965 when the parties' first child was born. She returned to work October 1966 as a secretary in the planning department. She left after one year as defendant, who was in the Navy, wanted her home when he was not at sea. In 1967 she went to work for Manpower until November 1968. Their second child was born in May 1969.
Between 1972 and 1976 plaintiff was unemployed because of the social responsibilities required of the wife of the Chief of USS Benjamin Franklin.
In 1976 the parties moved to Florida where plaintiff was unemployed. After parties returned to Connecticut, the defendant started a building and remodeling business, in which plaintiff worked as his secretary and bookkeeper until 1998. Defendant never paid plaintiff any salary for her services nor did he pay FICA taxes for her. Therefore, plaintiff is not eligible for social security benefits and disability benefits. She is presently unemployed.
The defendant was in the military service at the time of the parties' marriage. After 20 years he retired in 1978. Thirteen years of his military career were during his marriage to the plaintiff.
After retiring, defendant started a remodeling and carpentry business in 1982. He claims he is tuning down his business because of his balance problems. However, he wants to become a real estate agent.
The parties lived in various locations until plaintiffs mother deeded to her a tract of land in 1979, upon which the marital home was built. Plaintiffs mother loaned the parties $10,000.00 for the foundation and paid $2,600.00 for a sewer CT Page 6873 assessment. According to plaintiff and defendant's financial affidavit, the marital home is located at 27-1/2 Allyn St., Mystic, Connecticut and has a market value of $234,000.00 subject to a mortgage of $18,621.00 more or less.
In 1998 after plaintiff filed for divorce, defendant purchased 55 Breezy Knoll, Mystic, Connecticut. At that time there was a joint bank account of $22,000.00 and a joint CD of $10,000.00 which defendant took and applied some of to the purchase.
In addition to the real estate known as 27-1/2 Allyn St., Mystic, Connecticut, the plaintiff owns a 1979 Mercedes, valued at $2,100.00; miscellaneous furniture and furnishings, etc., valued at $4,300.00; a Phoenix Balanced fund, valued at $501.00.
In addition to 55 Breezy Knoll, Mystic, Connecticut, the defendant has tools and tractor he values at $10,000.00; model trains he values at $6,000.002 but which plaintiff claims have a value of $35,000.00; Liberty Bank accounts totaling $3,227.00; Nuveen stock worth as of March 9, 1999 $2,193.18; Kentucky Utilities stock worth $2,600.00; Phoenix stock valued at $6,320.80 as of December 31, 1998 and A.G. Edward account worth $49,074.24 as of January 29, 1999. Defendant also has life insurance with present cash value of $19,311.27. He has a U.S. Navy Retirement from which he receives weekly $322.38 and a U.S. Navy disability for which he receives $22.15. Defendant also shows a net weekly profit of $202.65 from his business.
Defendant claims the $22,000.00 joint account was business money. He used $21,000.00 for a down payment on 55 Breezy Knoll, Mystic, Connecticut. Later he put in about $21,000.00 of improvements. According to defendant's affidavit, said property is worth $95,000.00 but is subject to a $50,000.00 mortgage. Plaintiff claims the mortgage balance is actually $33,500.00.
As indicated above, the Court finds the defendant more at fault for the breakdown of the marriage. A decree dissolving the marriage of the parties is ordered. After considering the factors in Connecticut General Statutes §§ 46b-62, 81, 82, the following orders, which the Court deems to be fair and equitable, are ordered.
1. The defendant shall transfer to the plaintiff all of his right, title and interest in the marital home located at 27-1/2 CT Page 6874 Allyn St., Mystic, CT. The plaintiff shall hold the defendant harmless from any and all expenses related to ownership of said property. The defendant shall pay $6,000.00 on the taxes owed on the property. The plaintiff shall make reasonable efforts to remove the defendant from the note and mortgage on said property within one year.
2. The plaintiff shall receive by way of QDRO 40% of the defendant's military and disability pensions. The defendant shall name the plaintiff as survivor beneficiary on said pensions.
3. The defendant shall pay to the plaintiff alimony of $1 per week for a period of ten years. Said alimony shall be modifiable as to amount but not as to term.
4. The plaintiff shall keep as her own the 1979 Mercedes Benz automobile free of any claims from the defendant.
5. The plaintiff shall keep as her own the joint Liberty Bank accounts listed on her financial affidavit, her Phoenix Balanced fund.
6. Plaintiff shall keep as her own all the household furnishings and miscellaneous personal property except for what the defendant is permitted to remove as hereinafter set forth.
7. The defendant shall own, without any claim from the plaintiff, the real estate located at and known as 55 Breezy Knoll. He shall hold plaintiff harmless on any and all claims arising from ownership of said property.
8. The defendant shall keep the 1998 GMC free of any claim from the plaintiff.
9. The defendant shall be permitted to remove from the marital home all tools used by him in the carpentry trade, tractor and his model trains. All items shall be free of any claim by the plaintiff.
10. The Liberty Savings Bank in the defendant's sole name shall belong to the defendant.
11. All the Nuveen stock, Kentucky Utilities, Phoenix and A.G. Edward accounts listed on defendant's financial affidavit shall belong to the defendant free of any claim from the CT Page 6875 plaintiff.
12. The defendant shall maintain the life insurance policies listed on his financial affidavit and name the defendant as irrevocable beneficiary for her lifetime. If he decides to cash in said policy, the cash value shall belong to the plaintiff.
13. The defendant shall cooperate with the plaintiff in obtaining Cobra medical coverage for the plaintiff. The parties shall share equally the expense of said coverage but the plaintiff shall be responsible for any unreimbursed expenses.
14. Bach party shall pay their own attorney's fees.
Vasington, JTR